# Jacob C. Cooper, Plff. in Err., *v.* Allen Shaeffer, Admr. of Daniel Weaver, Deceased.

The disproportion between a life insurance policy for $3,000, assigned to a creditor as security, and $100, the amount of the debt secured, is so great as to constitute the transaction a wager.

If the insurance company pays the amount of the policy to the creditor the administrator of the insured can recover from the creditor the amount so paid less the debt with interest, and the sum which the creditor has paid to keep the policy alive.

If an assignee, from the creditor, of a one-half interest in the policy has received from the company one half the proceeds, he is liable to the administrator for the amount so paid him less one half the debt and interest and the whole amount paid by him to keep the policy alive.

(Argued May 4, 1887. Decided October 3, 1887.)

January Term, 1887, No. 434, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, and GREEN, JJ. Error to the Common Pleas of Lebanon County to review a judgment on a verdict for the plaintiff in an action of assumpsit. Affirmed.

This was an action of assumpsit by Allen Shaeffer, administrator of Daniel Weaver, deceased, against Jacob C. Cooper, to recover the excess of proceeds of insurance on the life of the plaintiff's intestate paid by the U. B. Mut. Aid Society of Lebanon, Pennsylvania, to the defendant, over and above the amount of the decedent's indebtedness to the defendant.

At the trial before McPHERSON, J., the following facts appeared:

In 1875 Weaver being indebted to John Blouch for about

Cited in Ulrich v. Reinoehl, 143 Pa. 238, 250, 13 L. R. A. 433, 24 Am.. St. Rep. 534, 22 Atl. 862, and in note to Roller v. Beam, 6 L. R. A. 136.

NOTE.—In the above case the unexplained disproportion was so great that the policy was declared a wager as a matter of law. Evidence of the debtor's expectancy of life, and the cost of maintaining the policy is admissible to show that the seeming disproportion is not an actual one. Ulrich v. Reinoehl, 143 Pa. 238, 13 L. R. A. 433, 24 Am. St. Rep. 534, 22 Atl. 862. See also Shaffer v. Spangler, 144 Pa. 223, 22 Atl. 865; Wheeland v. Atwood,. 192 Pa. 237, 73 Am. St. Rep. 803, 43 Atl. 946; Grant v. Kline, 115 Pa. 618,, 9 Atl. 150; McHale v. McDonnell, 175 Pa. 632, 34 Atl. 966.

$100, procured this policy for $3,000 and at once assigned it to Blouch who paid the premiums and assessments for several years and then assigned a one-half interest in the policy to the plaintiff Cooper. For several years therafter, and until Weaver's death, Blouch and Cooper paid all the premiums and assessments. Weaver died in 1883; and thereupon the company paid Cooper $1,800 and Blouch the balance.

The court charged the jury as follows:
[The disproportion between an insurance of $3,000 and a debt of $100 is so great as to compel the court to say to the jury that it was a wager policy.] 1

There are of course circumstances that might easily be suggested, in which there would not be sufficient disproportion, and in which there would be a question of fact for the jury; and you might easily cite cases in which it would be a question whether the court should say so, or whether the jury should say so. [But I think, as between $3,000 and $100 we are able to say to the jury that the disproportion is too great. . . . It is my duty to say whether there is enough to warrant a verdict. In my judgment there is not; and if there were a verdict for the defendant in this case, I would set it aside before the jury left the box. So it would be absurd to submit the question to the jury.] 2 . . .

[It is admitted that the original assignment was based upon a debt of $100, which Weaver owed to Blouch for meat furnished to him; and the evidence indicates that the assignment was made for at least the purpose of protecting that debt. We, therefore, say to you that that assignment to Blouch was good for that purpose; that it does protect that debt, and that, so far as this case is concerned, you are to make an allowance for that debt.] 3

You are also to make an allowance for such money as was paid by the defendant here for the purpose of keeping this policy alive. [And with regard to the debt that was due by Weaver to Blouch, it seems to me to be right, since Cooper only owns one half of this policy, that one half of that debt should be a further credit] 3 together with interest upon it, from the time the policy was taken out, or from the time the debt was due up to the time that Weaver died, or when the money was paid over. The difference between those two sums, the amount received by Dr.

Cooper and these sums, will be the amount for which your ver-
dict will be taken.

Verdict and judgment for plaintiff, for $1,100.44.

The assignments of error specified: 1–3, The portions of the
charge inclosed in brackets.

*J. P. S. Gobin,* for plaintiff in error.—The decisions in oppo-
sition to wagering policies do not affect the well settled rule that
a man may insure his life for the benefit of another, or may pro-
tect a creditor by assigning to him a policy originally taken out
by himself on his own life.   Ætna L. Ins. Co. v. France, 94 U.
S. 561, 24 L. ed. 287, note.

The essential thing is that the policy shall be obtained in good
faith, and not for the purpose of speculating upon the hazard of
a life in which the insured has no interest.   When such interest
exists, whatever be its nature and whatever the amount insured,
it is a valid transaction at its inception, and if the parties to it
are satisfied and do not provide for the contingency of dispro-
portion the court cannot do it for them.   Connecticut Mut. L.
Ins. Co. v. Schaefer, 94 U. S. 457–463, 24 L. ed. 251–254.

The transaction is not attacked by the insurance company nor
by a creditor of the insured, but by a volunteer who places him-
self in the shoes of the decedent, who lived eight years after this
transaction and made no effort to alter or restrict it.

A fair and proper insurable interest as a creditor having been
shown to exist at the time of taking out the policy, and that it
was taken out in good faith, the object and purpose of the rule
which condemns wager policies is sufficiently attained, and there
is then no good reason why the contract should not be carried
out according to its terms.   Corson's Appeal, 113 Pa. 438, 57
Am. Rep. 479, 6 Atl. 213 ; Scott v. Dickson, 108 Pa. 6, 56 Am.
Rep. 192.

Cooper took the policy with every quality of bona fides it pos-
sessed.   St. John v. American Mut. L. Ins. Co. 13 N. Y. 31,
64 Am. Dec. 529 ; 2 Duer, 419 ; Valton v. National Fund Life
Assur. Co. 20 N. Y. 32 ; Ashley v. Ashley, 3 Sim. 149 ; Cun-
ningham v. Smith, 70 Pa. 450 ; Clark v. Allen, 11 R. I. 439, 23
Am. Rep. 496.

*Bassler Boyer,* for defendant in error.—In Cammack v. Lew-

is, 15 Wall. 643, 21 L. ed. 244, the Supreme Court of the United States held that an insurance of $2,000 for Cammack's own benefit, to secure a debt of $70 was so disproportionate as to leave the transaction without any pretext of fairness, and was evidence of a speculative or gambling transaction.

See also Gilbert v. Moose, 104 Pa. 74, 49 Am. Rep. 570; Corson's Appeal, 113 Pa. 438, 57 Am. Rep. 479, 6 Atl. 213.

The question is not one of good faith, but of public policy. Seigrist v. Schmaltz, 113 Pa. 326, 6 Atl. 47; Downey v. Hoffer, 16 W. N. C. 185.

The right to recover is limited to the amount of the interest, at the time of effecting the policy. Dalby v. India & L. Life Assur. Co. 15 C. B. 365; Connecticut Mut. L. Ins. Co. v. Schaefer, 94 U. S. 457, 24 L. ed. 251; Scott v. Dickson, 108 Pa. 6, 56 Am. Rep. 192; Grant v. Kline, 115 Pa. 618, 9 Atl. 150.

OPINION BY MR. JUSTICE STERRETT:

It is conceded that the policy of $3,000 on the life of Weaver was taken out and immediately assigned to Blouch, for the purpose of securing a debt of $100 due by the former to the latter. Subsequently one half interest in the policy was assigned by Blouch to plaintiff in error, but Weaver was not in any manner a party to that transaction. On the death of Weaver the insurance company, recognizing its liability for the amount insured, paid $1,800 thereof to Cooper, and the residue to Blouch.

In view of the undisputed facts, the learned judge of the common pleas held that the disproportion between the insurance, $3,000, and the debt, $100, was so great as to require him to say, as matter of law, that the transaction was a wager, and that the assignees of the policy had no right to retain more of the insurance money received by them than the amount of the debt, plus the premiums paid and interest thereon. In this he was clearly right. The disproportion is so great as to make the insurance a palpable wager, and no court should hesitate to declare it so as matter of law.

It has heretofore been correctly said that the sum insured must not be disproportionate to the interest the holder of the policy has in the life of the insured; but we have never found it necessary to adopt any rule by which such disproportionate interest may be determined.

Speaking for himself, our brother PAXSON, in Grant v. Kline,

115 Pa. 618, 9 Atl. 150, suggests that a policy taken out by a creditor on the life of his debtor ought to be limited to the amount of the debt with interest and the amount of premiums with interest thereon, during the expectancy of the life insured according to the Carlisle tables. This appears to be a just and practicable rule.

It is not easy to define with precision what will in all cases constitute an insurable interest, so as to take the contract out of the class of wagering policies; but, as is said in Corson's Appeal, 113 Pa. 438, 445, 57 Am. Rep. 479, 6 Atl. 213: "In all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary, or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are, therefore, independently of any statute on the subject, condemned as against public policy."

But in such a case as the one before us, where the disproportion is so great, there can be no doubt as to the character of the transaction. There is no merit in either of the specifications of error.

Judgment affirmed.